[S. F. No. 4685.    Department One.—April 28, 1908.]

# REDWOOD CITY SALT COMPANY, Respondent, v. ARTHUR L. WHITNEY et al., Appellants.

PARTNERSHIP—PURCHASE BY PARTNERSHIP AND INDIVIDUAL MEMBER.— A member of a partnership as an individual may unite with the partnership in the purchase of property for the joint benefit of the partnership and himself personally.

ID.—ACTION AGAINST PARTNERSHIP AND INDIVIDUAL MEMBER—PLEADING.—An action to recover the purchase price of goods sold to a partnership and one of its members individually, is properly brought against all the members of the firm as partners, and such member individually; and a complaint therein which properly alleges such a sale, is not uncertain, ambiguous, or unintelligible, and does not misjoin causes of action or parties.

ID.—FORM OF JUDGMENT—EVIDENCE SHOWING MERE SALE TO PARTNERSHIP.—In such an action, where the evidence shows merely a purchase by and delivery to the partnership, there is no liability on the part of the defendant sued individually except such as the law imposed upon him as a member of the partnership for a partnership debt, and judgment should not be entered against him for an individual as distinguished from a partnership debt.

ID.—MODIFICATION OF JUDGMENT ON APPEAL. — Where, in such an action, judgment is entered against the partnership and also against the member individually sued, and the evidence shows merely a sale to the partnership, the court has power, on appeal, under section 578 of the Code of Civil Procedure, without directing an entire reversal of the judgment, to order its modification so that it shall be merely a judgment against the members of the partnership on their partnership liability.

ID.—EVIDENCE—REASONABLE VALUE.—The evidence reviewed and held to show that the amount for which judgment was rendered was the reasonable value of the goods sold.

APPEAL from a judgment of the Superior Court of San Mateo County.    George H. Buck, Judge.

The facts are stated in the opinion of the court.

Hewlett, Bancroft & Ballantine, for Appellants.

Ross & Ross, for Respondent.

ANGELLOTTI, J.—This is an appeal by all the defendants from a judgment in favor of plaintiff against them for the sum of $2,215.20 for goods sold and delivered.

1. The action was against Arthur L. Whitney and Albion H. Whitney, copartners doing business under the name and style of C. E. Whitney & Co., and said Arthur L. Whitney, individually. The complaint alleged that the plaintiff ''at the special instance and request of the defendants sold and delivered to the said defendants goods, wares and merchandise,'' the reasonable value of which was two thousand four hundred and ten dollars, and that no part of said sum had been paid. A demurrer on the grounds, 1. That several causes of action were improperly united in that a cause of action against Arthur L. Whitney and Albion H. Whitney as copartners, was joined with a cause of action against said Arthur L. Whitney, individually; 2. That there was a misjoinder of parties, in that said partners were joined as defendants with said Arthur L. Whitney, individually; 3. That the complaint was uncertain in that it did not appear therefrom whether the goods, etc., were sold and delivered to said partners or to Arthur L. Whitney individually; 4. That it was ambiguous for the same reason; and, 5. That it was unintelligible for the same reason, was overruled, and complaint is made of this ruling on this appeal.

There was no uncertainty, ambiguity, or unintelligibility in the complaint. It is susceptible of but one construction,—viz. that the goods were sold and delivered to the partnership, *and* Arthur L. Whitney as an individual, or, in other words, that Arthur L. Whitney and the firm of C. E. Whitney & Co., of which he was a member, jointly purchased the goods. We know of no reason why a member of a partnership as an individual cannot unite with the partnership in the purchase of property for the joint benefit of the partnership and himself personally. Certainly it would not be contended that property could not be purchased jointly by a partnership and a third person not a member of the firm, and there is no material distinction in this regard between the case of a third person and that of one who is a member of the partnership. The complaint states clearly, unambiguously, and intelligibly the simple case of a joint purchase by a partnership and an individual.

There was no misjoinder of causes of action. There was but a single cause of action stated,—namely, a cause of action for the reasonable value of goods sold and delivered, to *all*

the defendants, and there was no misjoinder of parties, for all of the parties jointly purchasing were necessary parties defendant. (See *Harrison* v. *McCormick,* 69 Cal. 616, 620, [11 Pac. 546]; *Cox* v. *Gille etc. Co.,* 8 Okl. 483, [58 Pac. 645].)

The demurrer, therefore, was properly overruled.

2. The verdict and judgment must likewise be construed as being against Arthur L. Whitney jointly with the partnership. It is contended that the evidence was not sufficient to support a conclusion of any joint purchase by the firm and Arthur L. Whitney individually. We think it is true that there was no substantial evidence to show anything but a purchase by and delivery to the partnership firm of C. E. Whitney & Co. This the evidence amply shows, with the result that each of the members of the firm, Arthur L. Whitney and Albion H. Whitney, was, jointly with his copartners, liable to plaintiff for the value of the goods. (Civ. Code, sec. 2442.) But there was no liability on the part of defendant Arthur L. Whitney except such as the law imposed upon him as a member of the partnership for a partnership debt. The judgment against him in so far as it may be a judgment for an individual debt as distinguished from a partnership debt is improper.

It does not follow, however, as appears to be assumed by appellants, that the judgment against the partners must be reversed. It is established that the common-law rule to the effect that in an action on a joint contract the plaintiff must recover against all or none of the defendants has been abrogated in this state, and that in such an action the plaintiff is entitled to a judgment against those of the defendants who are shown to be liable on the obligation. This is held to be the effect of section 578 of the Code of Civil Procedure, formerly section 145 of the Practice Act, providing that judgment may be given for or against one or more of several plaintiffs, and for or against one or more of several defendants. (*Lewis* v. *Clarkin,* 18 Cal. 399; *Shain* v. *Forbes,* 82 Cal. 577, [23 Pac. 198]; *Bailey Loan Co.* v. *Hall,* 110 Cal. 490, [42 Pac. 962].) This is undoubtedly the rule in this state, subject perhaps to the qualification that the defendants held liable are entitled to be protected against any material variance between the pleadings and the proof. (See *Chetwood* v. *California Nat. Bank,* 113 Cal. 424, [45 Pac. 704].) The

variance here was not material within the definition of that term in our Code of Civil Procedure (sec. 469), and judgment could properly have been given in the lower court against the partners alone, without any amendment of the complaint. (Code Civ. Proc., sec. 470.) This court may on this appeal vacate the judgment in so far as it purports to impose any liability on Arthur L. Whitney in addition to his liability as a member of the partnership of C. E. Whitney & Co., and leave the judgment in force in all other respects. (See *Nichols* v. *Dunphy,* 58 Cal. 605.) We have discussed this question upon the assumption that it is of some practical importance to Arthur L. Whitney that the judgment should be so changed as to relieve him from any such apparent additional liability. It appears to us that this assumption may be well based, and we are satisfied that he is entitled to have the judgment show clearly that the liability imposed thereby on him is solely one for the debt of a general partnership of which he is a member.

3. The only other point made for reversal is that the evidence was insufficient to show the value of the goods sold and delivered, which consisted of 777½ tons of salt. As already stated, the verdict was for $2,215.20. Of the 777½ tons, 185 tons were what is known as half-ground salt,—salt that had been run through the crusher,—and it is admitted that the reasonable market value of such half-ground salt, delivered, as this was, at the works of plaintiff at Redwood City, was $3.10 per ton, or a total for the 185 tons of $573.50. There being an admitted credit to defendants of $156.38 for work done by their employees in sacking the salt, there would be left $1,485.32 of the verdict for the remaining 592½ tons, which would make the price of such salt, delivered in sacks at plaintiff's works, about $2.50 per ton. We do not think that it can be held that there was not sufficient evidence that such salt so delivered was reasonably worth at least this amount. The original understanding between the parties appears to have been that the salt to be furnished should be half-ground salt, but as it was wanted immediately by defendants to fill an order for foreign shipment, and as it was impossible to run it through the crusher in time, Mr. Arthur L. Whitney, after a personal inspection of the salt at plaintiff's plant, authorized and directed the order to be filled by

the sacking and delivery of a lot of "drift" salt on hand, which he said was sufficiently fine for the purpose. He himself testified that, while in price there was *some* distinction between drift salt and half-ground salt, without stating how much, there was practically none in character, that one is often sold for the other, and that he did not know that any one could tell the difference. The salt delivered, for which recovery is here sought, was in fact used by defendants in filling the contract for half-ground salt for foreign shipment. It also appeared that defendants subsequently purchased from plaintiff salt of the same character as that here purchased for $3.50 per ton. There was, it is true, evidence on the part of defendants that some of the salt delivered did not come up to the standard of the drift salt authorized, but there was nothing to indicate how much there was of this. There is enough in the record to support a conclusion that the unground salt delivered was generally the drift salt described by Mr. Whitney, and that such drift salt was reasonably worth in the market nearly, if not quite, as much as half-ground salt. In addition to this there was the positive testimony of Mr. Lovie, the secretary of plaintiff, that the market value of the 777½ tons of salt was $3.10 per ton. Certainly we cannot say that a conclusion that the unground salt delivered was reasonably worth $2.50 per ton does not find sufficient support in the evidence.

It is ordered that the judgment be and the same is hereby modified by adding thereto the following provision,—viz. "This judgment, so far as defendant Arthur L. Whitney is concerned, is one against him solely in his capacity as a member of the partnership of C. E. Whitney & Co., and imposes no individual liability on him other than such as is imposed by reason of his membership in said firm," and as so modified said judgment is affirmed.

Shaw, J., and Sloss, J., concurred.