[S. F. No. 11459.   In Bank.—April 19, 1927.]

HARBOR CITY CANNING COMPANY (a Corporation), Respondent, v. CHARLES E. DANT et al., as Surviving Partners, Appellants.

[1] APPEAL — FINDINGS — CONFLICTING   EVIDENCE. — Although   many credible witnesses were produced on the trial whose testimony was in conflict with the findings as made by the trial court, their testimony can be of no force and effect upon appeal, where the trial court has rejected it in favor of testimony offered which is in accord with the findings.

[2] CONTRACTS—PURCHASE OF PEACH PULP—BREACH—ACTION FOR DAMAGES — TENDER — SUFFICIENCY OF EVIDENCE. — In this action for damages for breach of a contract to purchase peach pulp, it is held that the evidence was sufficient to sustain a finding that the tender of delivery was in accordance with the terms of the contract.

[3] ID.—SHORT   PACK—PRORATING — CONSTRUCTION   OF   CONTRACT. — Where a contract for the purchase and sale of a certain number of cases of peach pulp provides that in case of a short pack or government commandeer, requisition, or reservation, by reason of which the seller is unable to make full delivery of any of the goods specified, delivery shall be prorated, the provision for prorating is one for the benefit of the seller, and if he choose he

---

1.  See 2 Cal. Jur. 921; 2 R. C. L. 204.
2.  See 20 Cal. Jur. 787.

may supply the deficit in his own pack by purchase in the open market and comply with the terms of the contract.

[4] JUDGMENTS — PARTIES — PARTNERSHIP — INDIVIDUAL LIABILITY. — Where parties are sued as surviving partners of a firm and also individually, a judgment against them as such surviving partners and also as individuals is proper, the judgment against them in their individual capacities being based upon their statutory joint liability.

(1) 4 C. J., p. 883, n. 33, p. 885, n. 39. (2) 35 Cyc., p. 233, n. 98. (3) 35 Cyc., p. 171, n. 41 New. (4) 30 Cyc., p. 596, n. 62.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. J. J. Trabucco, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

Thomas, Beedy & Presley for Appellants.

Adams, Adams & Binford, Athearn, Chandler & Farmer and Phillip H. Angell for Respondent.

LANGDON, J.—This is an appeal by defendants from a judgment against them for damages for breach of a contract for the purchase by them of a large quantity of peach pulp. About many of the facts there is no dispute. On July 9, 1919, the copartnership of Christenson, Hanify & Weatherwax ordered in writing from plaintiff 10,000 cases of peach pulp, described in the contract as "6/10s" (which was elucidated by the testimony as signifying six number 10 cans to each case) at a price of $7.50 per dozen cans. It was also provided that the peach pulp should be of standard quality 1919 season's pack and that, in case of short pack or government commandeer, requisition, or reservation, delivery should be prorated. The goods were to be shipped as soon as practicable after packing. Plaintiff started to manufacture the pulp with the opening of the peach season in August. On August 19th plaintiff shipped to defendant two cars of peach pulp consisting of 3,684 cases and drew drafts for the amount of the purchase price. On August 21st defendant partnership wrote to plaintiff stating that the drafts had been received and would not be taken up

until samples were received. On August 26th defendant partnership telegraphed plaintiff that their buyer had refused to accept the peach pulp unless uniformity of color was guaranteed and refused to take up plaintiff's drafts until this matter was adjusted satisfactorily. On September 26th, when the manufacture of peach pulp had been practically completed, defendant partnership rejected the product on the ground that the same was not standard quality, 1919 season's pack peach pulp and was not merchantable. The cases of pulp which plaintiff had tendered defendant were then sold by plaintiff for the account of defendant and in this action plaintiff sought damages.

Defendants' answer alleged that the peach pulp contained improper materials, was unmerchantable, that it was not made of yellow, freestone peaches, as stated on the labels attached to the cans. There was also set up a defense relating to the number of cases tendered under the contract and consideration will be given to this matter hereinafter.

As to the issues framed regarding the soundness and merchantability of the product and its conformity to the requirements of the contract, the trial court found that between the nineteenth day of August, 1919, and the second day of October, 1919, plaintiff offered to perform its contract in accordance with the terms thereof and between said dates plaintiff offered for delivery and tendered to defendant 8,727 cases of standard quality peach pulp, 1919 season's pack, and offered to deliver to defendants the balance of said peach pulp as provided for under the terms of said contract and said defendants, between the dates named, refused to accept delivery of said peach pulp or any part thereof and on the twenty-sixth day of September, 1919, said defendant copartnership, without right, repudiated said contract and refused to accept delivery of and/or pay for said peach pulp, or any thereof, in accordance with the terms of the contract and so notified plaintiff. Said refusal to accept or to pay for said peach pulp was contrary to the terms of said contract and was without right or just or other lawful excuse; that the peach pulp manufactured for said copartnership and offered for delivery and tendered by plaintiff to said copartnership, as aforesaid, was standard quality 1919 season's pack peach pulp and said peach pulp was in all respects in compliance with the terms of said

contract. Said peach pulp was a sound and merchantable product and was fit for the general and ordinary purposes for which peach pulp is used.

[1] These findings are vigorously attacked by the defendants and appellants, who contend that the evidence does not justify the conclusion reached by the trial court. With this contention we are unable to agree. It is true the defendants produced many credible witnesses whose testimony was in conflict with the findings quoted, but their testimony can be of no force and effect upon appeal where the trial court has rejected it in favor of testimony offered for the plaintiff which is in accord with the findings. Of the latter class is the testimony of the witness Miller, a graduate chemist, technical director of the United States Food Health Service at Washington for years, and who was, at the time he examined the peach pulp in controversy, a director of the National Canners Association. His qualifications as an expert were admitted by defendants. It will serve no useful purpose to set forth his testimony here, but the substance of it was that he found the peach pulp "color normal, gravity good," "good quality without anything objectionable about them; that it was standard quality peach pulp of the 1919 peach pack." Supporting the testimony of the witness Miller, we find the testimony of the witness Duffy, a graduate of the University of California in pharmaceutical chemistry and occupying the position of state food and drug inspector for the state board of health. He made an examination of twenty-four cans taken from different portions of the lot tendered to defendants and found the product merchantable and of standard quality. The director of the state food and drug laboratory and associate professor of nutrition at the University of California testified that he examined samples of the peach pulp and found that it was "very easily standard" quality; that it contained a very small percentage of pits—five one-hundredths of one per cent and only one one-hundredth of one per cent of sand. There is other testimony in the record to the same effect and it answers appellants' objection to the findings of the trial court.

The second point urged upon the appeal to the effect that no contract was entered into between the parties be-

cause there was no meeting of the minds as to the subject matter thereof has been abandoned by appellants and conceded by them in their closing brief to be without merit.

[2] The third point urged is that there was an excessive tender by plaintiff and this brings us to a reconsideration of the original contract, pleadings, and evidence. The contract called for 10,000 cases of peach pulp and it was further provided: "In case of short pack or Government commandeer, requisition or reservation, by reason of which seller is unable to make full delivery of any of the goods specified, delivery shall be pro-rated." The tender made by plaintiff was of 8,727 cases and in this complaint it justifies this delivery by the allegation "that by reason of the shortage of pack of the peach pulp and of the peach crop in southern California in the year 1919, plaintiff was unable to make full delivery of said 10,000 cases of said peach pulp, and that by reason thereof plaintiff was obliged to prorate its said pack of peach pulp for said season and that under such pro-ration the proportion of the 10,000 cases agreed to be sold by the plaintiff to and purchased by the said copartnership . . . was 8,727 cases." In accordance with this allegation, the trial court found that there was a short pack in the year 1919 and that plaintiff prorated its pack and offered to deliver to defendant copartnership their *pro rata* share of said pack, to wit, 8,727 cases of peach pulp. It was further found in agreement with the correspondence between the parties appearing in the record that the plaintiff also offered to deliver to defendant the entire amount of peach pulp provided for in the contract prior to the rejection thereof by defendant copartnership. It is further found that the only ground of rejection specified by defendant was that the product was not standard quality 1919 season's pack.

Appellants are contending here that the evidence is not sufficient to sustain the finding that 8,727 cases was the *pro rata* share of defendants of the short pack. [3] Before considering this contention, it seems pertinent to observe that it is clear from the record and from the finding that plaintiff did offer to deliver the entire amount called for by the contract, which offer was rejected by defendant copartnership, which declined to accept delivery of any amount of

the product. It would seem that this was a valid offer of performance under the contract upon the theory that the provision for prorating under certain conditions was one for the benefit of the seller and in the nature of an option to him, and, therefore, if he chose, he might supply the deficit in his own pack by purchase in the open market and comply with the terms of the contract. It was held in the case of *Douglas Fir Exploitation etc. Co.* v. *Comyn*, 279 Fed. 203, 207, that a provision inserted in a contract for the benefit of one party cannot be taken advantage of by another and it was suggested that one of the important considerations in determining for whose benefit a provision is inserted in a contract is, for whose protection was the provision put in the contract. Appellants would have us assume that the condition was inserted in the contract for their benefit as well as for the benefit of the seller. This does not seem logical when we consider the circumstances under which the option would arise. If there was a short crop or a short pack in the state, obviously prices would rise, and it would be for the benefit of the seller to be relieved of a part of the delivery and to the detriment of the buyer.

However, it is unnecessary for us to found our conclusion upon this suggested interpretation of the clause in the contract permitting prorating, for we think the findings of the trial court find some support in the evidence. The trial occurred years after 1919, and the only witness who testified about the amount of the pack in 1919 stated that he did not know, exactly, the amount. At one place in the record he said it was around 9,000 cases, but he couldn't say exactly. Later he testified that it was less than 9,500. His testimony at a former trial was read into the record by defendants, from which it appeared that in answer to the question as to whether the pack was not 10,000 cases he had replied that he could not say exactly, because he had nothing to do with the office. The records of the cannery had been lost and it is apparent from the record that the witness was testifying from a hazy, general knowledge and a cloudy recollection only. It appeared that plaintiff was also under contract with a buyer other than defendant to sell 3,000 cases of peach pulp, and plaintiff's witness

Misuraca, who prepared the peach pulp, testified positively that the amount of the pack was prorated among the persons who had contracted to purchase it.

Appellants have shifted their position upon this question, which accounts somewhat for the unsatisfactory state of the record. In their pleadings and at the trial defendants took the position that plaintiff should have tendered 10,000 cases, and bent their efforts to proving this. Consequently plaintiff's efforts were to bring forward every item and circumstance which would tend to prove the minimum pack and sustain the tender of less than 10,000. Now, on appeal, defendants shift their position and insist the tender was too large, rather than too small. This position was not taken at the trial and plaintiff had no opportunity to bring forth evidence which would tend to meet this position. Plaintiff alleged that its tender was the *pro rata* share of defendants and its witness so testified, and we think, under all the circumstances of this case, the finding to that effect is supported by the evidence.

[4] The only other question involved upon the appeal is as to the form of the judgment. The action was brought against defendants Dant, Tyson, and Fleishhacker, as surviving partners of the firm of Christenson, Hanify & Weatherwax, and against the representatives of two deceased partners, and defendants Dant, Tyson, and Fleishhacker individually. As to the personal representatives, the action was dismissed because of irregularity in proving the claim against the estates. The judgment was given against Dant, Tyson, and Fleishhacker as surviving partners and against Dant, Tyson, and Fleishhacker individually. Appellants object to the judgment against them individually.

The Civil Code (sec. 2442) provides: "Every general partner is liable to third persons for all the obligations of the partnership, jointly with his copartners." The Code of Civil Procedure (sec. 388) provides: "When two or more persons, associated in any business, transact such business under a common name, whether it comprises the names of such persons or not, the associates may be sued by such common name, the summons in such cases being served on one or more of the associates; and the judgment in the action shall bind the joint property of all the associates and the

individual property of the party or parties served with process, in the same manner as if all had been named defendants and had been sued upon their joint liability."

In the case at bar the individual parties named in the judgment were served with process so as to bind their individual property and all appeared in the action.

In *Maclay Co.* v. *Meads,* 14 Cal. App. 363 [112 Pac. 195, 113 Pac. 364], the plaintiff sued the individuals, describing them as partners. The partnership was not named as a defendant. The lower court rendered judgment against the partnership as well as against the individuals composing the partnership. The appellate court reversed the judgment against the partnership, but upheld the judgment as to the individuals composing the partnership. The court said: "But where, as here, the action is against the members of the partnership in their individual character, and not against the partnership by its partnership name, the effect of service of process or summons on one member, or on all the members, is not to summon the partnership, but only the member or members upon whom such service is had, and in such case, in order to bind all the members of the firm by any judgment which may be obtained in the action, service of summons must be made on all. Of course, where the action is against the partnership, then, by the terms of section 388, *supra,* service of summons on one or more of the members of the partnership is sufficient, and thereby the judgment in the action is binding not only upon "the joint property of all the associates," but also upon "the individual property of the party or parties served with process."

The appellants rely upon the case of *Redwood City Salt Co.* v. *Whitney,* 153 Cal. 421 [95 Pac. 885]; in which the plaintiff sought to hold the partnership and one of the members composing the partnership as joint debtors. The evidence showed the debt was created by the partnership and the court held that since the evidence showed the individual partner was not jointly liable with the partnership, no individual judgment could be had against him. However, the court said that he was jointly liable on the partnership debts, but was not sued with his copartners on this joint liability. The language of the court in the Whitney case is not in conflict with the action of the trial court here,

as will appear from the following extract from the opinion:
"But there was no liability on the part of defendant Arthur
L. Whitney except such as the law imposed upon him as
a member of the partnership for a partnership debt."

It appears, therefore, that under the case cited by appel-
lant, as well as the other authorities cited herein, the rule
is that if partners are joined with the partnership as de-
fendants a judgment against them in their individual capa-
cities is valid, based upon their statutory joint liability.

The judgment appealed from is affirmed.

Preston, J., Curtis, J., Richards, J., Seawell, J., Shenk, J.,
and Waste, C. J., concurred.

Rehearing denied.