[Civ. No. 4876. Third Appellate District.—June 5, 1933.]

A. J. AZEVEDO et al., Appellants, v. M. E. SEQUEIRA et al., Respondents.

Stephen P. Galvin for Appellants.

Thomas F. Lopez for Respondents.

THOMPSON, J.—This is an appeal from a judgment quieting title in some of the defendants to nine shares of the capital stock of Gustine Creamery, Inc., a corporation.

The court found that the plaintiffs A. J. and M. J. Azevedo, the defendants Sequeira, Pereira, Avila and one Silveira organized in 1914 and subsequently operated a copartnership under the firm name of A. J. Azevedo and Company, as a dairy business; that they purchased independently of the copartnership seven shares of the capital stock of the Gustine Creamery, Inc., a corporation, which shares were personally owned by said individuals as follows: A. J. Azevedo, two shares, and the other five partners last mentioned one share each. It was further found that these shares of stock were subsequently augmented by the earnings from stock dividends until each of said original seven shares were multiplied by three and aggregated twenty-one

shares in all. The plaintiffs thereby became the owners of six shares and the other last-mentioned partners, to wit, Sequeira, Pereira, Avila and Silveira, became the owners of three shares each. The court found that the partnership was subsequently dissolved, leaving each of the individuals possessed of the Gustine Creamery shares of stock as above related; that all of said stock was purchased and issued in the name of A. J. Azevedo and Company, and subsequently wrongfully transferred to the individual plaintiffs who hold the respective shares in trust for the real owners thereof as specified. Judgment was accordingly rendered quieting title to three shares of said stock in each of the following named defendants, to wit, Sequeira, Avila and Pereira. The judgment fails to quiet title to any of said stock in plaintiffs. From this judgment the plaintiffs have appealed.

It appears that the defendant Antonio T. Avila was sued as Antonio Homen, and Manuel Souza Pereira was sued as Manual Pereira Souza. Substitution was made in the proper names of said defendants.

The appellants contend the findings and judgment are not supported by the evidence. The theory of the appellants is that the original seven shares of stock were purchased with the funds of the dairy partnership and that they were subsequently sold at the time of the dissolution of the partnership and afterwards repurchased by the plaintiffs. The judgment is not challenged on the ground that the court failed to quiet title in plaintiffs to their six shares of stock. The findings will support such a decree and it may properly have been so drawn. That, however, is immaterial to the determination of this appeal.

In 1914 a partnership was organized in the name of A. J. Azevedo and Company, consisting of seven members, including the plaintiffs and defendants to this suit. There were no written articles of copartnership. A. J. Azevedo testified that he purchased with partnership funds six shares of the capital stock of the Gustine Creamery, Inc., a corporation, "for the company". He afterwards purchased one additional share of stock. Without the knowledge of the defendants these shares were issued in the name of A. J. Azevedo and Company. Mr. Azevedo testified that about a year later the partnership "split up". Another dairy partnership was organized by the plaintiffs, including members

other than the defendants. Mr. Azevedo claimed that he and his brothers purchased the creamery stock as their individual property subsequent to the reorganization of the dairy partnership.

Mr. Sequeira testified that seven shares of the creamery stock were purchased so that each of the original seven partners might separately own one share. He said that the original seven partners had a conversation about the shares of stock when an accounting of the business was had at the time of the reorganization of the partnership. He testified: ''Antone Azevedo said that they (the Gustine Creamery) were selling stocks in the creamery at Gustine . . . and (asked) if we wanted to buy some, and all of us said yes. . . . And afterwards he bought it, $300 worth of shares, six shares. . . . We had seven partners in that business and we all agreed to buy one more share *so that each of us would have a share.* . . . At that time I don't know whether he bought it in the (name of the) company, or for each one individually, . . . but I know now that the shares were all in the name of A. J. Azevedo.'' At the time this last conversation occurred regarding the stock, it was agreed the seventh share should be purchased ''so that each one of us would have one share. . . . It was all agreed and understood between all of us . . . that he would buy one more share so each one of us would have one share in the creamery. . . . I did not know whether he had it in A. J. Azevedo and Company or in each one of us individually.'' Azevedo was the manager of the dairy business. There is evidence to indicate that he acted as the agent for the respective members of the partnership in the purchase of the stock, and that the purchase price of the stock was originally taken from the proceeds of the business and subsequently charged to each in the final accounting. Sequeira testified that in a subsequent conversation A. J. Azevedo ''told me I would get my share without any trouble, . . . that he knew it was mine''.

It was stipulated that Mr. Pereira, who was present in court, would testify to the same facts heretofore related by Mr. Sequeira.

This evidence is sufficient to support the findings of court to the effect that the original stock was purchased by A. J. Azevedo as the agent of each individual member of the

original partnership for their private ownership, and that he wrongfully procured the issuing of the stock in the name of the partnership; that each member owned one share of the stock which earned by means of stock dividends two additional shares, and that the defendants Sequeira, Avila and Pereira are the owners of three shares each of said stock. The judgment is therefore amply supported by the evidence.

It is true that *"unless the contrary intention appears,* property acquired with partnership funds is partnership property". (Sec. 2402, Civ. Code.) Almost any kind of property may be acquired and owned as partnership property. The intention with which the property is acquired and used will usually determine the question as to whether it is partnership or individual property. (20 R. C. L. 854, sec. 61.) The intention of the parties with respect to the ownership of property acquired at the time of the organization of the partnership or subsequently may be determined by the acts or oral declarations of the parties. (20 R. C. L. 855, sec. 62.) In the absence of evidence to the contrary it will be presumed from the fact that stock is purchased in the name of the partnership and with its funds that it belongs to the partnership, and that the interest of each member therein extends jointly and not separately to the whole thereof. (20 R. C. L. 870, sec. 81.) But it is not unusual that real or personal property may be acquired and used for the benefit of the partnership and still be owned individually by one or more of the partners. (*Grant* v. *Bannister,* 160 Cal. 774, 782 [118 Pac. 253]; *Redwood City Salt Co.* v. *Whitney,* 153 Cal. 421 [95 Pac. 885].) Indeed in the present case the plaintiffs are contending that the very stock which is involved in this suit is their individual property and not that of the partnership to which they succeeded in association with other members. From the fact that this stock was purchased from the funds of the partnership business in the name of the firm, there is a presumption that it belongs to the partnership. But that presumption has been dispelled by substantial evidence that it was the intention of the parties that the creamery stock was to be purchased and owned individually by the respective partners in equal shares. The fact that one additional share was subsequently purchased so that each of the seven

members might own a share, is a strong circumstance supporting the finding of the court that it was the intention of the partners that the stock should become their individual property. This was agreed to by all the partners according to Sequeira, at the settlement of their interests after the original partnership was dissolved.

The judgment is affirmed.

Pullen, P. J., and Plummer, J., concurred.