PRICE *v.* McFEE, ADMINISTRATRIX

[No. 32, October Term, 1949.]

444

*Decided December 7, 1950.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*John W. Farrell* and *Hyman Ginsberg*, with whom were *Ginsberg & Ginsberg* on the brief, for the appellant.

*Seymour O'Brien* and *Benjamin C. Howard* for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

The question on this appeal is whether the insurance of $15,000 paid to Gertrude A. McFee as the beneficiary of a life insurance policy which had been held by her husband, Robert A. McFee, now deceased, is an asset of a partnership which consisted of Thomas J. Price and her husband and traded as Atlas Wiping Cloth Company and T. J. Price and Company.

Price and McFee were copartners for about ten years in the business of dealing in wiping cloths, paper stock, hair and kindred commodities. During that time there were three partnership agreements. The first, which was entered into April 1, 1939, contained the following provision: "That if the parties hereto agree and do procure partnership life insurance on their respective lives, it is agreed that such insurance shall be payable to their respective personal representatives; and any amount so received from such insurance shall be deducted from the amount that would be due the personal representatives for the interest of the deceased partner in the partnership assets. That any and all premiums on such insurance shall be paid by the partnership and charged as an expense, and any cash surrender value of such policy or policies shall until the death of either partner belong to the firm."

In October, 1941, Price applied to the Lincoln National Life Insurance Company for life insurance, but the policy was not made payable to his personal representative, but to his wife if living, otherwise to their children. In November, 1941, McFee applied to the Equitable Life Insurance Company of Iowa for life insurance, but this application was turned down on account of his physical condition. On December 31, 1941, the partnership was dissolved, and an agreement was entered into forming a new partnership consisting of four members, Mr. and Mrs. Price and Mr. and Mrs. McFee. This agreement was quite similar to the first, but it did not contain any provision whatever for partnership insurance. McFee again applied to the Equitable Life Insurance Company for life insurance on April 1, 1942, and this time the company issued him the policy in question in the amount of $15,000, with his wife as beneficiary, but in the event of her death to their children.

Prior to 1946 Edgar T. Wagner, the firm's accountant, charged the premiums on the policies to the partnership account. But about the beginning of 1946 an agent of the Internal Revenue Bureau notified him that he could

not deduct the amounts of the premiums as expenses of the partnership. Thereafter the accountant charged the premiums against the account of the partner to whom the policy was issued.

The second partnership was dissolved as of December 31, 1945, and McFee and Price thereafter conducted the business as copartners under an oral agreement. The third partnership was dissolved by the death of McFee on December 27, 1948.

Mrs. McFee, upon qualifying as administratrix of her husband's estate, asked Price for her husband's share in the partnership assets. Price claimed that he was entitled to deduct $15,000, the amount of the insurance which the Equitable Life Insurance Company had paid to Mrs. McFee as the beneficiary of her husband's policy. Mrs. McFee disputed that claim, and on March 25, 1949, Price and Mrs. McFee entered into a stipulation agreement admitting McFee's interest in the partnership assets to be $28,558.43, and providing that if it should be determined that Mrs. McFee is entitled to the additional sum of $15,000, Price would pay her that amount and interest thereon at 6 per cent from March 15, 1949. In accordance with the agreement, Price paid her $13,558.43 without prejudice to any right she might have to collect the additional sum of $15,000.

Mrs. McFee, as administratrix, entered this suit in the Court of Common Pleas to recover from Price the sum of $15,000, which she claimed was the balance due on account of her husband's interest in the partnership. The Court, sitting without a jury, found that the insurance policy was not an asset of the partnership, and accordingly entered a judgment in favor of Mrs. McFee for $15,849.60, this amount being the balance withheld by Price plus interest from March 15, 1949. From that judgment Price took this appeal.

The trial Court ruled correctly in refusing to permit Price to testify as to his transactions with McFee. Such testimony was inadmissible because of the statutory provision in this State that in actions or proceedings by

or against executors or administrators of a decedent as such, in which judgments or decrees may be rendered for or against them, no party to the cause shall be allowed to testify as to any transaction had with, or statement made by the testator or intestate, unless called to testify by the opposite party, or unless the testimony of such testator or intestate shall have already been given in evidence. Code 1939, art. 35, sec. 3; *Weaver v. King,* 184 Md. 283, 40 A. 2d 511; *Heil v. Zahn,* 187 Md. 630, 51 A. 2d 174; *Snyder v. Cearfoss,* 187 Md. 635, 641, 51 A. 2d 264.

Defendant relied chiefly upon the fact that the premiums were paid prior to 1946 out of the partnership account. It is undeniable that the use of partnership funds for the purchase of property is strong evidence tending to show that the partners considered the property as belonging to the partnership. But that fact alone is by no means conclusive. The Uniform Partnership Act, which has been in effect in this State since 1916, provides (1) that all property originally brought into the partnership stock or subsequently acquired, by purchase or otherwise, on account of the partnership is partnership property; and (2) that unless the contrary intention appears, property acquired with partnership funds is partnership property. Laws of 1916, ch. 175, Code 1939, art. 73A, sec. 8. The criterion for determining whether property held in the name of one partner is to be considered as partnership property is the intention of the partners to devote it to partnership purposes at the time the property was acquired, as shown by the facts and circumstances surrounding the transaction of purchase considered in connection with the conduct of the parties toward the property after the purchase. *Rollman v. Rollman,* 175 Md. 379, 383, 2 A. 2d 15; *Johnson v. Hogan,* 158 Mich. 635, 123 N. W. 891, 897, 37 L. R. A., N. S., 889; *Azevedo v. Sequeira,* 132 Cal. App. 439, 22 P. 2d 745; *Sieg v. Greene,* 8 Cir., 227 F. 41. Thus the United States Circuit Court of Appeals held in *Hays v. Harris,* 8 Cir., 78 F. 2d 66, 70, that insurance

on the life of a partner was not intended to be partnership property notwithstanding that the partnership was named as the beneficiary of the policy and the premiums were paid for a certain period of time out of the partnership funds and later charged against the accounts of the several partners. In the opinion in that case the Court took occasion to explain that the life insurance "was never included as a partnership asset in any financial report made by the company."

First, it is undeniable that neither Price nor McFee took out life insurance in pursuance of any written agreement. The provision in the first agreement for partnership insurance was an optional one. It provided that if the parties should agree to procure partnership life insurance, it should be made payable to their respective personal representatives. Price made his policy payable to his wife, and in the event of her death, to their children. Likewise, McFee made his policy payable to his wife, and in the event of her death, to their children. The first partnership was dissolved on December 31, 1941, and on the same day the second agreement was executed by the four partners. The second agreement made no provision whatever for partnership insurance. On March 30, 1942, while this agreement was in effect, the policy was issued to McFee. Therefore, it is clear that there was no written agreement as to partnership insurance when McFee's policy was issued.

Secondly, the firm's accountant testified that he had never received any instructions as to how to charge the premiums on the books. It is true that the premiums were paid out of the partnership account prior to 1946, but that was admittedly done by the accountant on his own initiative; and after the agent of the Internal Revenue Bureau notified him that the premiums could not be charged to the partnership for tax purposes, Price and McFee, without comment, immediately ordered that the premiums be charged to their individual accounts.

Thirdly, no entries were ever made on the books of the firm to show that any life insurance policies were

carried as assets of the partnership under the first, second or third agreements. The accountant testified that the cash surrender value of the insurance policies was never carried as an asset on the books of the partnership "during all the period of the years that the premiums were paid."

Fourthly, the fact that the insurance policy was not kept among the partnership assets, but was kept in McFee's home on Enfield Road, is still another significant fact showing the intention of the parties.

As the evidence sustains the conclusion that Price and McFee intended their life insurance policies to belong to them individually and not to be assets of the partnership, we will affirm the judgment entered in favor of plaintiff.

*Judgment affirmed, with costs.*