KOLKER *v.* GREENBERG, ET AL.

[No. 282, September Term, 1958.]

---

*Decided June 26, 1959.*

The cause was argued before Brune, C. J., and Henderson, Hammond, Prescott and Horney, JJ.

*Harry Goldman, Jr.,* for appellant.

*Melvin J. Sykes* and *Max Sokol,* with whom were *Dickerson, Nice & Sokol* on the brief, for appellees.

Henderson, J., delivered the opinion of the Court.

Milton Kolker filed a suit in equity against Samuel Green-

berg, his relative and partner, to compel Greenberg to account to the partnership for the cash proceeds received by him from the sale of stock in Inter-American Specialty Corporation. After a full hearing on the merits, the Chancellor dismissed the bill. Despite the fact that the shares of stock in the corporation were issued in the individual names of the two partners, and the purchase price charged to their individual drawing accounts, the appellant contends that the stock belonged to the partnership originally and that there was no subsequent agreement for a division of the proceeds.

The partnership agreement provided that the partners, engaged in the business of manufacturing buckles, heel plates and kindred products, should share equally in the profits. Kolker and Greenberg each contributed about $10,000 to the capital account, but from time to time Kolker advanced some $26,000 in addition. It was agreed that this advance should bear interest, and that 75% of the profits should "be allocated" to the liquidation of Kolker's advance, although the advance was never actually repaid. The remaining 25% was divided equally and withdrawn. Greenberg received a salary of $150 a week and devoted full time to the business. Kolker received a salary of $50 per week, although he was employed full time in another business. The partnership was a success, earned profits each year, and is solvent as to creditors. At the time of the signing of the partnership agreement it was contemplated that the partners should enter into a foreign venture through a separate corporation to be formed, in which a third party should contribute 50% and the partners 25% each. Greenberg was to receive a salary for supervising the business of the new corporation. The stock was not only issued in individual names, but there was an agreement that the corporation would buy the stock of any deceased stockholder, from his heirs or personal representatives. The issued shares were placed by each partner in his own safe deposit box. The corporation was a financial success, but its stock was subsequently sold to a foreign purchaser at an advance in price over the amounts originally paid.

When this deal went through, payment was made to the partners individually. Kolker received some $17,000, and

Greenberg some $25,000, the difference being due to past and future salary claims on Greenberg's part. Greenberg paid Kolker a sum he owed him individually, paid off other individual indebtedness to others, with Kolker's knowledge, and retained the balance. Kolker accepted the payment for his shares, and deposited the money in his own account. The capital gains from the sale of the stock were accounted for individually, and not as partnership assets. But some time later, when differences between the partners arose, Kolker insisted that the proceeds from the sale of stock issued to Greenberg should have been paid to the partnership and used to liquidate the sum originally advanced to the partnership by him.

The law of the case is well settled. Whether property held in the name of one partner is to be treated as a partnership asset depends upon the intention of the parties. See *Price v. McFee,* 196 Md. 443, 448. Cf. *Fleischmann v. Gottschalk,* 70 Md. 523, 529. See also Code (1957), Art. 73A, sec. 8 (2), and *Williams v. Dovell,* 202 Md. 351, 357. The case turns upon questions of fact.

Without stating the facts in detail, we may point to the following indicia, in addition to the fact that the stock was issued in the individual names and charged to their individual accounts: Subsequent agreements containing recitals of individual ownership; the agreement as to purchase from the estate of each stockholder; retention among individual papers; acceptance of checks in individual names; profit not reflected in partnership records or income tax reports; reports of individual capital gains for tax purposes; Greenberg's share of the proceeds reflected, without dispute, compensation for loss of future income, unquestionably as a personal asset. As against this, the appellant relies strongly upon the fact that the stock was once listed on a partnership statement submitted to the Finance Corporation of America. But the accountant explained the entry as merely intended to forestall any question as to profits otherwise unaccounted for, and not as reflecting partnership books or indicating the ownership as between the partners. Even if this statement would be binding as against a creditor, it would not necessarily be binding as between the partners, particularly in view of the evidence of contrary in-

tention.   Moreover, the subsequent sale transaction was sufficient to convert the stock from a partnership to an individual asset in any event.   The Chancellor found that it was so converted, by consent of the partners, and we cannot find that he was clearly wrong.   There is no doubt that conversion may be made by consent, as between the partners of a solvent firm. See Code (1957), Art. 73A, secs. 21 (1), 25 (2) (a) ; Lindley on *Partnership* (11th ed.), p. 420; Crane on *Partnership* (2d ed.), p. 188.

The appellant actually does not dispute this proposition. Rather, he argues that his consent is not binding because he did not know what his rights were, citing  *B. & A. R.R. Co. v. Carolina Coach Co.,* 206 Md. 237. But the record does not support the argument.   The appellant was a mature business man, with executive experience, represented by counsel of his own selection.   The evidence points to a subsequent change of position, not to any mistake on his part.   The partnership agreement provided that the partnership might be dissolved at any time.   Kolker wished to avoid dissolution.   He preferred to continue to draw a salary, although working full time for another company, to draw interest on his advance, and to share in the profits.   At the time the stock was sold there is a clear intimation in the record that Kolker was satisfied for the partners to divide the proceeds.   He testified that he "wanted to be as diplomatic as possible."   There was no mistake of law or of fact.   For reasons of his own, Kolker simply did not insist on repayment of his advance as a condition of the sale. On the contrary, he consented without protest to a division of the proceeds and their use by each partner, individually.   If the business continues, there may still be funds out of which the advance may be repaid.   We find nothing to indicate that there was any overreaching or concealment on the part of Greenberg, or any violation of fiduciary duty on his part.

*Decree affirmed, with costs.*